IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DAN STALNAKER,**
**Claimant Below, Petitioner**

**FILED**
**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-103**          (JCN: 2022015229)

**WEST VIRGINIA UNIVERSITY,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Dan Stalnaker appeals the February 13, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent West Virginia University timely filed a response.[1] Mr. Stalnaker filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders which (1) denied the additional diagnoses of restrictive lung disease, PTSD, nocturnal hypoxia, chronic fatigue, decrease in cognition/memory, post-COVID-19 syndrome and dyssomnia, and (2) found that a ventilation quality ("V/Q") scan was not medically related and reasonably required treatment for the compensable condition.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the events leading to this appeal, records from Louis A. Johnson VA Medical Center indicated that Mr. Stalnaker had a history of chronic fatigue, fibromyalgia, and sleep apnea. He was assessed with multiple conditions including dyssomnia, for which he was prescribed medication. Mr. Stalnaker was seen on January 20, 2017, and he was diagnosed with fibromyalgia and chronic fatigue. He reported a history of sleep disturbances over ten years and stated that he was previously referred to a sleep clinic.

Mr. Stalnaker completed an at-home COVID test on November 8, 2021, which was positive, and then went on the same date to the Emergency Department at Davis Medical

---

[1] Mr. Stalnaker is represented by J. Thomas Greene Jr., Esq., and T. Colin Greene, Esq. West Virginia University is represented by Charity K. Lawrence, Esq.

Center where a CT scan of his chest was positive for COVID-19. The CT scan showed diffuse ground glass densities involving all lobes of the lungs which likely represented a COVID-19 infection and/or developing bronchopneumonia. Mr. Stalnaker completed an Employees' and Physicians' Report of Occupational Injury or Disease on December 2, 2021, which alleged that while working as a physician assistant at Davis Hospital, he sustained a systemic injury, COVID-19. The physician's portion was signed at Davis Medical on December 3, 2021, and noted a systemic occupational injury/occupational disease from COVID-19. By order dated February 7, 2022, the claim administrator held the claim compensable for COVID-19.

On March 16, 2022, George Zaldivar, M.D., performed an independent medical evaluation ("IME") of Mr. Stalnaker. Dr. Zaldivar noted that Mr. Stalnaker complained of shortness of breath and chronic fatigue, that he was diagnosed with chronic fatigue and fibromyalgia thirty years prior, that he had chronic fatigue due to a presumptive illness acquired while in the Gulf War, and that he had been on Cymbalta for four or five years for his chronic myalgia. A pulmonary function study was performed at the visit with Dr. Zaldivar which noted that Mr. Stalnaker's effort for the pre-bronchodilator study was variable, but the post-bronchodilator effort was good. Dr. Zaldivar indicated that the total lung capacity was mildly reduced. Further, Dr. Zaldivar noted that Mr. Stalnaker had contracted COVID on November 8, 2021, and that he had not returned to work since the diagnosis. Dr. Zaldivar's assessment was history of COVID-19; preexisting history of chronic fatigue exacerbated by COVID-19; history of being told that he has restrictive lung disease; positive history of possible TIAs; and periodic hypoxemia at night, which should be investigated by a sleep test.

On March 22, 2022, Mr. Stalnaker was seen by Salam Rajjoub, M.D., who assessed nonspecific interstitial pneumonitis, shortness of breath, wheezing, chronic respiratory failure, post COVID-19 condition, and cough. On March 31, 2022, Rebecca Thaxton, M.D., performed a physician's review of Mr. Stalnaker's records and opined that a final decision should be withheld on the compensability of additional diagnoses pending cardiology and pulmonary evaluations, a complete neuropsychic evaluation, and obtaining pre-claim medical reports to sort out preexisting conditions and COVID-19.

On April 10, 2022, Mr. Stalnaker underwent a CT of his lungs, which showed no evidence of interstitial fibrosis.

In an addendum report dated April 14, 2022, Dr. Zaldivar indicated that he had reviewed additional medical records. Dr. Zaldivar stated that at the time of his evaluation, Mr. Stalnaker's diffusion capacity was normal, but his spirometry and lung volumes were not usable because of less-than-optimal effort. Further, Dr. Zaldivar opined that based on the records he reviewed, there was no pulmonary impairment after his COVID-19 pneumonia. Dr. Zaldivar's assessment remained the same as in his March 16, 2022, report.

2

Dr. Rajjoub noted that Mr. Stalnaker's April 21, 2022, pulmonary function test indicated mild restriction. Dr. Rajjoub also noted that Mr. Stalnaker's six-minute walk test, conducted on April 22, 2022, showed oxygen saturation levels of 98 and 99, which indicated no need for oxygen with activities.

On April 30, 2022, Dr. Zaldivar issued a second addendum report stating that Mr. Stalnaker's current complaints were not supported by the medical evidence; that his diffusion capacity, walking oximetry, and six-minute walk were all normal; that the spirometry lung volume tests were not valid; and that there was no objective evidence of any pulmonary abnormality. Dr. Zaldivar recommended a sleep study to determine whether Mr. Stalnaker had obstructive sleep apnea. He opined that Mr. Stalnaker's COVID-19 pneumonia was completely cleared, without any injury to his lungs, that Mr. Stalnaker had reached maximum medical improvement, and that he had 0% whole person impairment using the American Medical Association's, *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993).

By letter dated May 18, 2022, Mr. Stalnaker objected to Dr. Zaldivar's report and requested that restrictive lung disease, PTSD, nocturnal hypoxia, chronic fatigue, decrease in memory and cognition, post COVID-19 syndrome, and dyssomnia be added to his claim.

Mr. Stalnaker was seen by Dr. Rajjoub on May 25, 2022, who noted that his fibromyalgia had worsened, he was on oxygen as needed, and that he underwent a sleep study. Dr. Rajjoub diagnosed nonspecific interstitial pneumonitis, shortness of breath, wheezing, chronic respiratory failure, post COVID-19 condition, cough, and fatigue. Dr. Rajjoub also diagnosed obstructive sleep apnea and ordered an additional sleep study.

In a physician review report dated June 3, 2022, Randall Short, M.D., considered whether the additional diagnoses of restrictive lung disease, PTSD, nocturnal hypoxia, chronic fatigue, decrease in memory and cognition, post COVID-19 syndrome, and dyssomnia should be added to the claim as compensable conditions. Dr. Short opined that there was no objective medical evidence that Mr. Stalnaker had ongoing pulmonary impairment or any secondary condition related to his COVID-19 diagnosis. Further, Dr. Short opined that there was no objective medical documentation to support adding to the claim any of the requested diagnoses. In an updated report dated June 7, 2022, Dr. Short indicated that he had reviewed the April 22, 2022, six-minute walk test with normal oxygen saturation and the April 21, 2022, pulmonary function studies, which noted variability in flow loop tracing. Dr. Short stated that his opinion was unchanged from his previous report.

By order dated June 8, 2022, the claim administrator denied Mr. Stalnaker's request for additional diagnoses in the claim based on Dr. Short's June 3, 2022, report and June 7, 2022, addendum report. Mr. Stalnaker protested this order.

On June 16, 2022, Mr. Stalnaker followed up with Dr. Rajjoub, who assessed chest pain for which a V/Q scan would be scheduled, shortness of breath for which a referral to WVU would be requested, sleep apnea for which he recommended a second sleep study, wheezing, chronic respiratory failure, post COVID-19 condition, cough, excessive daytime sleepiness, and fatigue.

When Mr. Stalnaker was seen by Leslie Tolle, M.D., on June 22, 2022, he indicated that his primary complaint was fatigue and dyspnea. Dr. Tolle opined that based on Mr. Stalnaker's chest CT, his lungs were clear, there was no pleural effusion or pneumothorax, and there was no evidence of interstitial fibrosis. Dr. Tolle recommended a V/Q study to rule out chronic pulmonary embolism and cardiopulmonary exercise testing.

Mr. Stalnaker submitted an article from the Mayo Clinic dated June 26, 2022, which discussed the long-term effects of COVID-19. The article identified fatigue, shortness of breath/difficulty breathing, cough, joint pain, chest pain, memory and concentration problems, sleep problems, muscle pains, headaches, fast or pounding heartbeat, loss of smell or taste, depression, anxiety, fever, dizziness when standing, and worsened symptoms after physical or mental activities as symptoms of long term COVID-19. The article further noted that while COVID-19 is seen as a disease that primarily affects the lungs, it can also damage many organs including the heart, kidneys, and brain.

Mr. Stalnaker's July 5, 2022, Cleveland Clinic NM Lung Vent/Perf V/Q had the impression of low probability of pulmonary embolism. The cardiopulmonary exercise test was completed on the same date, and evidence for cardiovascular limitations included a low anaerobic threshold, attenuated heart rate response, low blood pressure response, high VE/VCO2, and increased dead space plus gas exchange impairment.

On July 13, 2022, the claim administrator issued an order denying the addition of the following diagnoses to Mr. Stalnaker's claim: restrictive lung disease, PTSD, nocturnal hypoxia, chronic fatigue, decrease in cognition/memory, post COVID-19 syndrome, and dyssomnia. Mr. Stalnaker protested this order.

On September 20, 2022, Dr. Rajjoub noted that Mr. Stalnaker's chest pain was unchanged and that he would request a V/Q scan to evaluate his pain and shortness of breath.

On October 24, 2022, Dr. Thaxton performed an additional physician's review of Mr. Stalnaker's claim, in which she considered Dr. Rajjoub's request for a V/Q scan. Dr. Thaxton noted Mr. Stalnaker's history of obesity and obstructive sleep apnea symptom. Dr. Thaxton noted that Dr. Zaldivar determined in his IME that Mr. Stalnaker was at maximum medical improvement and that he had 0% whole person impairment. Further, she noted that Mr. Stalnaker's chest x-ray was clear and did not reveal any obvious COVID-19 sequelae. Dr. Thaxton opined that Mr. Stalnaker has various risk factors for

4

thromboembolic and cardiac disorder which are not related to his claim. Dr. Thaxton concluded that while the V/Q scan was medically necessary, the reviewed medical evidence did not support it being causally related to the claim. By order dated November 16, 2022, the claim administrator denied the request for authorization for V/Q scan, based on Dr. Thaxton's physician review. Mr. Stalnaker protested this order.

On November 28, 2022, Ali Khan, M.D., responded to a questionnaire prepared by Mr. Stalnaker and indicated that Mr. Stalnaker had COVID-19 pneumonia on or about November 2021, that he had long-haul COVID-19 and severe limitations related to COVID-19, thus, a V/Q scan was necessary.

On December 1, 2022, Dr. Tolle responded to a similar medical questionnaire prepared by Mr. Stalnaker. Dr. Tolle indicated that Mr. Stalnaker had severe COVID-19 pneumonia on or about November 2021; that he had long-haul COVID-19; that a V/Q was completed on July 5, 2022; that he had severe cardiopulmonary impairment; and that he did not believe that Mr. Stalnaker's problems were caused by his BMI.

Mr. Stalnaker was deposed on December 20, 2022, and testified regarding his exposure to COVID-19 while at work. Mr. Stalnaker stated that the first time he sought medical treatment for COVID-19 was on November 8, 2021, after he had not been feeling well for a few days. Mr. Stalnaker testified that he suffered from chronic fatigue and fibromyalgia following the Gulf War, that this condition improved in 2014, but that his symptoms returned after his COVID-19 illness. Mr. Stalnaker also indicated that he had memory issues following his COVID-19 diagnosis.

On August 16, 2023, Christopher Martin, M.D, completed a medical review report, which addressed the additional diagnoses that Mr. Stalnaker requested to add to his claim. Dr. Martin opined that a diagnosis of restrictive lung disease was not supported by the medical records because the spirometry tests were of poor quality and the results were uninterpretable. Dr. Martin opined that the more definitive measure of lung volume showed a pattern of mild restriction, which he did not believe was related to COVID-19. Further, Dr. Martin stated that PTSD should only be diagnosed by a qualified psychiatrist, and that nocturnal hypoxia is an objective finding and not a disease. Dr. Martin noted that chronic fatigue and dyssomnia are subjective symptoms, and that the medical records were clear that these symptoms were reported prior to Mr. Stalnaker's COVID-19 diagnosis. Dr. Martin opined that decrease in memory/cognition is also a subjective symptom, and that he did not see results of any testing of Mr. Stalnaker's memory/cognition. Dr. Martin concluded that the V/Q scan was requested eight months after Mr. Stalnaker's COVID diagnosis, and that his symptoms could be attributed to causes other than COVID-19, the test bears no relationship to his diagnosis. Dr. Martin further opined that in order to diagnose Mr. Stalnaker with long COVID-19 his symptoms could not be attributable to any other condition.

On February 13, 2024, the Board issued an order affirming the claim administrator's July 13, 2022, denial of the additional diagnoses of restrictive lung disease, PTSD, nocturnal hypoxia, chronic fatigue, decrease in cognition/memory, post-COVID-19 syndrome and dyssomnia, as not related to the COVID-19 diagnosis, and affirming the claim administrator's November 16, 2022, order, which found that the V/Q scan was not medically related and reasonably required medical treatment for the compensable condition. Mr. Stalnaker now appeals this order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Stalnaker argues that the evidence of record supports a finding that Mr. Stalnaker's impairment started at the time of his compensable COVID-19 illness, which has continued to limit him to the present date and for the foreseeable future. Further, Mr. Stalnaker asserts that the V/Q scan is reasonable and medically necessary, as it was recommended to establish whether Mr. Stalnaker's shortness of breath is caused by his lungs or a blood clot. We disagree.

As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

Upon review, we conclude that the Board was not clearly wrong in affirming the claim administrator's order which denied the secondary conditions of restrictive lung disease, PTSD, nocturnal hypoxia, chronic fatigue, decrease in cognition/memory, post-COVID-19 syndrome, and dyssomnia. The Board concluded that these conditions were not related to the diagnosis of COVID-19 and were thus properly rejected. The Board also noted that Mr. Stalnaker had a long history of multiple conditions that preexisted his COVID-19 diagnosis. Further, the Board found that Dr. Martin's report was the most persuasive because he assessed Mr. Stalnaker's request to add secondary diagnoses in detail in light of the extensive medical evidence and because his findings are supported by the reports from Drs. Zaldivar and Short. Dr. Martin concluded that the evidence does not support a diagnosis of restrictive lung disease; that nocturnal hypoxia is not a disease; and that there is no evidence from a psychiatrist that Mr. Stalnaker has PTSD. Further, Dr. Martin found that Mr. Stalnaker's complaints of chronic fatigue, decrease in cognition/memory, dyssomnia, and post-COVID-19 syndrome are subjective symptoms that can be attributed to conditions that preexisted his COVID-19 diagnosis. Finding no error, we defer to the Board's credibility determinations. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence. . . .").

Further, we conclude that the Board was not clearly wrong in finding that Mr. Stalnaker did not establish that the V/Q scan is medically related and reasonably required medical treatment for the compensable condition. The Board noted that Dr. Thaxton opined that the V/Q scan was not necessary for Mr. Stalnaker's compensable conditions. Additionally, Dr. Martin explained that if Mr. Stalnaker had evidence of an increased risk for blood clots from COVID-19 this would have been limited to the time that he had an active case of COVID-19. Based on the foregoing, we conclude that the Board's finding that Mr. Stalnaker did not establish that the V/Q scan is medically related and reasonably required medical treatment for the compensable condition is supported by substantial evidence on the whole record.

Accordingly, we affirm the Board's February 13, 2024, order.

Affirmed.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

7